# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**ALVIN SHARPE,**

      **Petitioner,**

**v.**                                        **Case No.: 4:14cv550-RH/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 14, 2014, Petitioner Alvin Sharpe, proceeding pro se, filed a petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Respondent filed an answer with exhibits on June 9, 2015.  ECF No. 14.  Pursuant to an order granting leave, Petitioner filed a reply on July 10, 2015.  ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned as determined that no evidentiary hearing is required for the disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 cases in U.S. Dist. Cts.  For the reasons stated herein, the

undersigned has determined that the § 2254 petition should be denied.

## Background and Procedural History

On June 22, 2006, Petitioner was charged by information in Florida's

Second Judicial Circuit (hereinafter "trial court") with one count of

attempted first degree murder.  ECF No. 14 Ex. A.[1]  The information

alleged that Petitioner did unlawfully attempt to kill Kevin L. Ratliff by

shooting with a firearm, and that the attempted killing was perpetrated from

or with a premeditated design or intent to kill, in violation of sections

777.04(4)(b) and 782.04(1)(a)(1), Florida Statutes.  Ex. A at 1.  On

February 20, 2008, after a jury trial, Petitioner was convicted of the lesser

included offense of attempted second degree murder with a firearm.  *Id.* at

2.  Petitioner was sentenced as a prison releasee reoffender under section

775.082(8)(b), Florida Statutes, to a thirty-year prison term.  *Id.* at 6-7.

Appeal was taken to Florida's First District Court of Appeal (hereinafter

"First DCA"), which affirmed Petitioner's conviction and sentence per

curiam on July 27, 2009.  *Id.* at 36; <u>Sharpe v. State</u>, 13 So. 3d 1060 (Fla.

---

[1] Hereinafter, all citations to the state court record, "Ex.—," refer to exhibits submitted
with Respondent's answer.  *See* ECF No. 14.

1st DCA 2009) (table).  On November 16, 2009, Petitioner filed a "Petition for Writ of Habeas Corpus" in the First DCA.[2]  Ex. B at 1-10.  On May 21, 2010, pursuant to Montgomery v. State, 70 So. 3d 603 (Fla. 1st DCA 2009), aff'd, State v. Montgomery, 39 So. 3d 252 (Fla. 2010), the First DCA reversed Petitioner's conviction and sentence, and remanded the case for a new trial.  Ex. B at 30-31; Sharpe v. State, 39 So. 3d 342 (Fla. 1st DCA 2010).

On August 11, 2011, before being retried, Petitioner filed a pro se motion asking the trial court to conduct a hearing and remove his appointed counsel, known in Florida as a Nelson inquiry.[3]  Ex. D at 210.  Petitioner filed a subsequent motion for Nelson hearing on September 6, 2011.  Id. at 214.  The trial court held a hearing on September 28, 2011, at which Petitioner orally withdrew his motion.[4]  Ex. F at 123-24.  On November 9,

---

[2] In his petition before the First DCA, Petitioner claimed ineffective assistance of appellate counsel for (1) failure to file a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b), and (2) failure to raise on direct appeal a claim of fundamental error with respect to an improper jury instruction on attempted manslaughter by act.  Ex. B.

[3] See Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), adopted by Hardwick v. State, 521 So. 2d 1071 (Fla. 1988).

[4] In the hearing, the court asked Petitioner whether he wished to fire his attorney. Petitioner answered "I don't.  We'll forget about the Nelson."  Ex. F. at 124:11-12.  The court then asked "So you're okay, you want to drop that?" to which Petitioner responded "Sure."  Id. at 124: 13-15.

2011, with his new trial still pending, Petitioner filed a pro se application for writ of habeas corpus with Florida's Third Judicial Circuit, the jurisdiction in which Petitioner was incarcerated. *Id.* at 218-29.[5]  The application was transferred to the trial court, in the Second Judicial Circuit, which struck the pro se pleading pursuant to Booker v. State, 807 So. 2d 800 (Fla. 1st DCA 2002), because Petitioner was represented by counsel at the time.  Ex. D at 239.

Petitioner was retried on February 10, 2012.  Ex. H at 42.  The prosecution's case centered on the testimony of witnesses present at the scene of the shooting, and on inculpatory statements made by Petitioner after his arrest.  *Id.* at 59-62, 175-85.  Petitioner presented no witnesses, and the defense strategy rested on the fact that many of the prosecution's witnesses were convicted felons whose testimony might be both biased and internally inconsistent, as well as the lack of forensic evidence in the case.  *Id.* at 62-63, 185-200.  The jury convicted Petitioner of the lesser

---

[5] In this filing, Petitioner contended that his new trial after vacation and remand of his original judgment and sentence violated the Double Jeopardy Clause of the United States Constitution.  Ex. D. at 221.  Petitioner also argued that, since his conviction had been reversed, he should be released from custody pending retrial.  *Id.* at 223.

included offense of aggravated battery with a firearm. *Id.* at 210. Petitioner was sentenced to a 20-year prison sentence. Ex. D at 302.

Petitioner filed a notice of appeal on March 23, 2012. On appeal, Petitioner's counsel filed an <u>Anders</u> brief, certifying that counsel was unable to make a good-faith argument that the trial court committed reversible error, except for certain sentencing errors. Ex. I. Petitioner raised those sentencing errors through counsel in a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). Ex. G at 305-21. Petitioner filed a separate pro se brief[6] on January 18, 2013, by the Mailbox Rule. Ex. J. The First DCA affirmed Petitioner's conviction and prison sentence on May 22, 2013, and remanded to correct errors in Petitioner's monetary assessments. <u>Sharpe v. State</u>, 115 So. 3d 1021,1023 (Fla. 1st DCA 2013). Petitioner moved for rehearing on May 30, 2013. Ex. K at 5-17. The First DCA denied his motion on July 9, 2013, and issued its mandate on July 25, 2013. *Id.* at 18-19.

---

[6] In his brief, Petitioner argued that the trial court committed fundamental error by instructing the jury on lesser included offenses not charged in the information, and by convicting Petitioner of the lesser included offense of aggravated battery with a firearm "in the absence of allegations in the information of the essential elements there[of] and in which [sic] denied him a fair trial as a matter of law." Ex. J at 2.

Case No.: 4:14cv550-RH/CAS

On August 7, 2013, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "Rule 3.850") in the trial court. Ex. L at 1-25. Petitioner asserted three grounds for relief: (1) that trial counsel's failure to "fully advise [Petitioner] in reference to testifying" violated Petitioner's Sixth Amendment right to counsel, *id.* at 6; (2) that trial counsel rendered ineffective assistance by failing to object to improper comments made by the prosecutor in closing argument, *id.* at 8; and (3) that the cumulative errors of trial counsel amounted to ineffective assistance of counsel, and denied Petitioner a fair trial, *id.* at 11. On August 19, 2013, while his Rule 3.850 motion was still pending before the Second Circuit, Petitioner filed an "Emergency Petition for Writ of Habeas Corpus Relief" in Florida's Third Judicial Circuit, reasserting the double jeopardy and jurisdictional claims from his pro se appellate brief. *Id.* at 26-34. The Third Judicial Circuit transferred this "Emergency Petition" to the trial court in the Second Judicial Circuit on September 9, 2013. *Id.* at 36-37. The trial court considered the "Emergency Petition" as a supplement to Petitioner's Rule 3.850 motion, and denied relief on the merits with respect to all grounds asserted in the combined motion. *Id.* at 39-40. Petitioner moved for rehearing on October

24, 2013, and the trial court denied that motion on November 6, 2013.  Ex. M at 214-21.

Petitioner filed a notice of appeal to the First DCA on November 13, 2013, and filed a petition for writ of certiorari[7] in that court on November 15, 2013.  Ex. M at 222-23, Ex. O at 1-8.  The First DCA affirmed the trial court's denial of Petitioner's Rule 3.850 motion without opinion on August 22, 2014.  Ex. R; Sharpe v. State, 147 So. 3d 989 (Fla. 1st DCA 2014) (table).  The First DCA issued its mandate on September 17, 2014.  Ex. R.

## Analysis

On October 14, 2014, Petitioner filed the instant petition for writ of habeas corpus in this Court.  Petitioner raises three claims of ineffective assistance of trial counsel, for (1) failure "to fully advise the Petitioner in reference to testifying" in Petitioner's own defense at trial, (2) failure "to object to the prosecutor's misconduct" in closing argument, and (3) "cumulatively denying the Petitioner a fair trial" through combined errors at trial.  ECF No. 1 at 3-7.  Respondent admits that the section 2254 petition

---

[7] Petitioner's application for writ of certiorari contended that the trial court had improperly failed to address the merits of his case, despite the fact that the trial court denied each claim on the merits and not on procedural grounds.  See Ex. L at 39-40 (denying Petitioner's motion on the merits).

"appears timely," ECF No. 14 at 3, and Petitioner has properly exhausted each claim before state courts.  *See* 28 U.S.C. § 2254(b)(1)(A) (providing that a federal court shall not grant relief unless "the applicant has exhausted the remedies available in the courts of the State"); *but see id.* § 2254(b)(3) (providing that the exhaustion requirement may not be deemed waived).  Therefore, the Court may consider the merits of Petitioner's claims.

**Standard of Review**

Federal courts do not review section 2254 petitions *de novo*.  A federal court shall not grant habeas relief to "a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated in the merits" in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law."  *Id.* §§ 2254(d)-(d)(1).  This standard of review is "'difficult to meet'" and "'highly deferential'" to the state court's conclusions of law.  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

The scope of "clearly established federal law" is limited to federal law "as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  State court decisions are "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Section 2254(d)(1) prevents a federal court from granting relief "in cases where a state court's error is limited to the manner in which it *applies* Supreme Court precedent."  *Id.* at 407.  The single exception to this rule is when the state court adjudication, though not contrary to established federal law, nonetheless involves an objectively unreasonable application of Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 409-410 (holding federal courts "should ask whether the state court's application of clearly established federal law was objectively unreasonable" and disapproving a subjective standard). Under section 2254(d)(1) "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. *See also* Frazier v. Bouchard, 661 F.3d 519, 530-31 (11th Cir. 2011) (discussing prongs of § 2254(d)(1)).

Because each ground for relief Petitioner asserts claims ineffective assistance of trial counsel, the appropriate legal standard is the rule established in Strickland v. Washington, 466 U.S. 668 (1984), and other cases in which the United States Supreme Court has clarified and interpreted that standard. To prevail on a claim of ineffective assistance of trial counsel, an individual must show two things:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

To establish constitutional prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Whether a reasonable probability has been demonstrated is assessed in light of the whole record before the court. *See* Porter v. McCollum, 558 U.S. 30, 41 (2009) (per curiam) (noting that, to assess the probability of a different sentencing outcome, courts "consider 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding' and 'reweig[h] it against the evidence in aggravation' " (quoting Williams, 529 U.S. at 397-98)).

"[T]he Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one." Harrington, 562 U.S. at 105. The Sixth Amendment guarantees a defendant the right to "a reasonably competent attorney," not a perfect one. Strickland, 466 U.S. at 687 (quoting McMann v. Richardson, 397 U.S. 759, 770 (1970)). "Although courts may not indulge *post hoc* rationalization for counsel's decision making that contradicts the available evidence of counsel's actions, . . . [t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington, 562 U.S. at 109 (internal citations

omitted). Strickland "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* at 110. A court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." Frazier, 661 F.3d at 531-32 (quoting Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995)); *see also* Strickland, 466 U.S. at 697.

In the context of section 2254(d)(1), this Court does not conduct an independent review of Petitioner's trial counsel's conduct by applying the Strickland standard *de novo.* Instead, section 2254(d)(1) requires this Court to review the state courts' application of the Strickland standard to each claim in turn, and ask whether each application was contrary to clearly established federal law, or involved an objectively unreasonable interpretation thereof. *See* Williams, 529 U.S. at 405-11; Frazier, 661 F.3d at 531 (noting that claims of Strickland violations in state court proceedings are subject to a " 'doubly' deferential" standard of review under Harrington)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

Case No.: 4:14cv550-RH/CAS

The record this Court may review "is limited to the record that was before the state court that adjudicated the claim on the merits." Frazier, 661 F.3d at 528 (quoting Cullen, 563 U.S. at 181)); *see* Porter, 558 U.S. at 41 (providing that ineffective assistance claims are assessed in light of the whole trial record). Although the First DCA affirmed the state post-conviction court's denial of Petitioner's Rule 3.850 motion without opinion, the First DCA's ruling is still an adjudication on the merits for purposes of section 2254(d). *See* Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).

**Ground I: Trial Counsel's Failure to "Fully Advise" Petitioner**

In his first ground for relief, Petitioner contends that his trial counsel rendered ineffective assistance by failing to fully advise him of the extent to which he could be cross-examined if he chose to waive his Fifth Amendment privilege and testify in his own defense. ECF No. 1 at 3-5. Petitioner claims that he would have testified at trial, but chose not to because "counsel explained to him that if he testified that [sic] the State was going to bring up his prior criminal history." *Id.* at 4. Petitioner

> understood that to mean that if he testified the State was going to question him about his previous convictions and that the jury would hear automatically that he had been convicted of sells

> [sic] cocaine, and possession of cocaine and they
> would find him guilty of the instant offense, based
> on his propensity to commit crimes. [. . .] Had the
> Petitioner been fully advised by counsel he would
> have testified that: He did not commit the offense,
> that he was innocent.

*Id.*[8]  Petitioner describes the case against him as "marginally weak," and

contends that his proffered testimony would have resulted in reasonable

probability of a different outcome at trial.  *Id.*

At Petitioner's second trial, the State called three witnesses who

knew Petitioner and had personal knowledge of the events surrounding the

shooting.  The first, Valerie Mitchell, described her relationship with

Petitioner with the statement, "He's my best friend and still is," and testified

that she had known him for about twenty years.  Ex. H at 67-68.  Mitchell

saw Petitioner walk up to the victim, draw a gun, and fire a total of "four or

five" shots at the victim.  *Id.* at 68-69.  Mitchell twice described the firearm,

and her second description—though more detailed—was consistent with

the first.  *Id.* at 68, 71.  When Petitioner fled into the nearby woods after the

---

[8] In addition to the convictions mentioned in his section 2254 petition, Petitioner's
criminal record at the time of trial also included convictions for tampering with evidence
and giving a false name to police officers.  *See* Ex. D at 297 (describing Petitioner's
prior convictions).

shooting, Mitchell saw that Petitioner still had the gun in his hand.[9]  *Id.* at

70.  Mitchell identified Petitioner at trial as the person she witnessed shoot

the victim.  *Id.* at 78.  Mitchell also admitted on direct examination that she

had one prior felony conviction.  *Id.* at 79.  On cross examination, Mitchell

testified that she did not personally witness any fight earlier in the day

between Petitioner and the victim, that she was facing the victim and

talking to him at the time he was shot, and that on the afternoon of the

shooting "[t]he sun was out shining pretty."  *Id.* at 79-81.  Mitchell also

testified on cross examination that, at the time of the shooting, she was as

close to Petitioner as the counsel table[10] in the courtroom was to the

second juror in the jury box.  *Id.* at 80-81.

The State's second witness, Kevin Ratliff, was the victim of the

shooting.  Ratliff testified that Petitioner walked up to him while Mitchell and

several others were present and that, after a short argument, Ratliff turned

---

[9] No firearm was recovered in the course of the subsequent investigation.

[10] Petitioner's counsel asked Mitchell if "this table" represented where the victim was standing in relation to Mitchell and Petitioner, and Mitchell answered in the affirmative. Ex. H at 80.  The record does not reflect which table Petitioner's counsel was referring to, or the placement of the tables and jury box within the courtroom.  It is therefore not possible to specify with exactitude how far away Mitchell was from Petitioner and the victim, but the jury would have had a very precise understanding of the distances based on Mitchell's testimony and would have been able to evaluate her ability to view the events in question as they unfolded.

to walk away, at which point he was shot. *Id.* at 85-86. On direct

examination, Ratliff admitted that he did not know who shot him:

> MS. FRAZIER (prosecutor): And you're saying that
> you don't know who shot you; correct?
>
> MR. RATLIFF: No, ma'am.
>
> MS. FRAZIER: But you had been standing out there
> with [Petitioner]?
>
> MR. RATLIFF: It was me, my cousin Valarie
> [Mitchell] was there. I really can't remember who all
> was there, but it was more than him there. It was a
> lot of us up under the tree.

*Id.* at 88. Ratliff described an argument with Petitioner earlier in the day, in

which he "told [Petitioner] he was dead ass wrong for him to argue with his

mama and that was it." Ratliff also described his own criminal record on

direct examination:

> MS. FRAZIER: Now, have you ever been convicted
> of a felony?
>
> MR. RATLIFF: Yes, ma'am.
>
> MS. FRAZIER: How many times?
>
> MR. RATLIFF: Six.
>
> MS. FRAZIER: And are you currently—have a
> pending violation of probation?
>
> MR. RATLIFF: Yes, ma'am.

> MS. FRAZIER: And have I made any promises to you about testifying here in regards to that case?
>
> MR. RATLIFF.  No, ma'am.
>
> MS. FRAZIER: Okay.  So it's not your understanding that anything is going to happen with that case because you came here today?
>
> MR. RATLIFF:  No, ma'am.

*Id.* at 89.  On cross, Ratliff admitted that he did not actually see Petitioner shoot him, and that he did not see Petitioner "with a gun that day."  *Id.* at 90.  Ratliff qualified his testimony, saying "I can't say who shot me.  I don't—I got shot in the back, sir.  My back was turned at the time I got shot."  *Id.* at 92.  On redirect, Ratliff testified that he did not see anyone else with a gun, either; and that, when he heard the first gunshot, he immediately ran in the opposite direction of where Petitioner was standing. *Id.* at 92.  The State's third witness, Carolyn Gibbs, testified that she was sitting in a nearby yard braiding hair when she heard one gunshot that was followed by several more after a pause, and then saw the victim running towards her from the direction of the shooting.  *Id.* at 94-95.  Gibbs testified that when the victim ran up, "[h]e said, [Petitioner] shot me."[11]  *Id.* at 95-96.

---

[11] Petitioner's trial counsel did not object to this testimony.

Case No.: 4:14cv550-RH/CAS

Gibbs then drove the victim to the local fire department, from where he was later taken to the hospital. *Id.* at 97. Gibbs admitted that she had two past felony convictions. *Id.* At 97-98. On cross, Gibbs admitted that she never saw Petitioner with a gun that day despite being with Petitioner most of the day, and never saw Petitioner have an argument with the victim. *Id.* at 98-99.

The State also called two law-enforcement witnesses to testify to inculpatory statements Petitioner made after his arrest. The first, Detective Ron O'Brien, was the officer to whom Petitioner surrendered after fleeing the scene of the shooting. Detective O'Brien responded to the dispatch call and was assisting in a search of the area when Petitioner flagged down his vehicle and told him "I'm the man you're looking for. I'm Alvin Sharpe." *Id.* at 129-130. Detective O'Brien then opined that Petitioner probably turned himself in because he "[did not] want the situation to become worse than it already is." *Id.* at 134. Petitioner's counsel objected that the statement was speculation, and the trial court sustained the objection. *Id.* at 134.[12]

---

[12] Petitioner's counsel did not move to strike Detective O'Brien's speculative testimony, and it was therefore still available to the jury to consider in their deliberations, albeit with the knowledge that it was speculative. *See* <u>Kelly v. State</u>, 202 So. 2d 901, 902 (Fla. 2d DCA 1967) ("Where 'the answer presents evidence which is illegal or objectionable on any known ground, the proper practice is a motion to strike it out, and have the jury directed not to consider it'."(quoting <u>Ortiz v. State</u>, 11 So. 611, 614 (Fla. 1892)).

The State also called Deputy Joe Leserra, who had transported Petitioner

from the scene of his arrest to the Leon County Sheriff's Office (hereinafter

"LCSO").  *Id.* at 137.  While at LCSO, Deputy Leserra heard Petitioner say

"I'm going to do my 10 or 20 years, get out.  You just don't slap me.  I don't

care."  *Id.* at 137.

The State's final witness was Samuel E. Baity, a jailhouse informant

who claimed to have talked with Petitioner about Petitioner's case.  Baity

identified Petitioner at trial as the person he spoke with while they were

both in custody at the Leon County Jail.  *Id.* at 141.  Baity further claimed

that Petitioner had admitted shooting Ratcliff because Ratcliff slapped him

during an argument, and that he had used a .357 Magnum to commit the

shooting.  *Id.* at 143-46.  Baity also admitted to having several prior felony

convictions, as well as a number of felony charges pending at the time of

trial.  *Id.* at 146.  With respect to his cooperation with the prosecution, Baity

testified that "I would hope it would help me [with my other charges], but

realistically, I doubt if it will."  *Id.* at 146.  Petitioner's counsel focused his

cross-examination on Baity's status as a "jailhouse snitch," and on the

prison time Baity could expect if convicted on his pending charges.  *Id.* at

147-48.  Baity also testified to the details of the charges pending against

him in both New York and Florida courts for grand larceny, possession of

stolen property, and being a fugitive from justice. *Id.* at 154-157.

Petitioner's counsel concluded his cross by focusing on Baity's motivation

for testifying:

> MR. HIGGINS (Petitioner's counsel): Mr. Baity, let
> me ask you pointblank. You do not want to go to
> prison either in the State of Florida or the State of
> New York; correct?
>
> MR. BAITY: Pointblank, do not want to go to prison,
> but it's going to happen. That's why I ran.
>
> MR. HIGGINS: And that's why you're here today
> giving testimony as a jailhouse snitch; correct?
>
> MR. BAITY: If you would like to categorize me as a
> jailhouse snitch and put it as me, sure. But a
> jailhouse snitch looks for the evidence. I didn't go to
> [Petitioner]. I didn't ask him about his case. He
> came to me.
>
> MR. HIGGINS: And you are using whatever you can
> to help you in him to benefit you; correct?
>
> MR. BAITY: Sure. If you would like to say that, no
> problem.

*Id.* at 156-157. The State did not conduct any redirect examination of Baity

and rested its case. *Id.* at 157. After the jury was dismissed, Petitioner

informed the trial court that he did not wish to testify and that he did not

need more time to make that decision. *Id.* at 158. The court did not inquire

as to whether Petitioner had discussed this decision with counsel or whether counsel had advised him not to testify.

Petitioner presented his claim of ineffective assistance based on counsel's failure to advise in his Rule 3.850 motion.  Ex. L at 6-8.  The state court denied relief on Petitioner's claim of ineffective assistance, holding that "there is no reasonable probability that the outcome would have been different" because Petitioner "was identified as the shooter by a close acquaintance, strong evidence suggested that he turned himself into police after fleeing from the scene . . ., and after surrendering he spontaneously implicated himself as the perpetrator."  *Id.* at 39-40.  The state post-conviction court further reasoned that, in light of Petitioner's counsel's trial strategy of impeaching the prosecution's witnesses with their prior felony convictions, the jury would not have believed Petitioner's claim of innocence because "he would surely have been impeached by the State on that same basis."  *Id.* at 40.  The state post-conviction court concluded that Petitioner was "unable to demonstrate any prejudice from counsel's actions."  *Id.*  The First DCA affirmed without opinion.  Sharpe, 147 So. 3d at 989.

The state court adjudications of Petitioner's Ground I are not contrary to clearly established federal law, nor did they involve an unreasonable application of such law.  The state courts applied the correct standard under Strickland, and their adjudications of Petitioner's claim are therefore not "contrary to" federal law.  *See* Williams, 529 U.S. at 405-06.  The state post-conviction court's adjudication of Petitioner's claim on the prejudice prong alone without reaching the issue of whether counsel's performance was deficient is likewise not contrary to federal law.  *See* Strickland, 466 U.S. at 697 (providing that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

The state post-conviction court's conclusion that Petitioner could not satisfy the prejudice element of Strickland was also objectively reasonable. Petitioner was identified as the perpetrator by a witness who knew him well, had a clear view of events as they unfolded, and was able to give a detailed description of the firearm.  Although the victim did not see Petitioner shoot him, this was because he was facing away from Petitioner at the time, and the jury could reasonably conclude that this did not discredit the victim's testimony to any serious degree.  Furthermore, the

jury could reasonably assign significant weight to Petitioner's inculpatory statements to law enforcement.  Petitioner's characterization of the evidence against him as "marginally weak" is not supported by the record. The state post-conviction court's conclusion that Petitioner's bare assertion of his innocence would not lead to a reasonable probability of a different result was itself objectively reasonable.  *See* Strickland, 466 U.S. at 694 (requiring claimant to show a "reasonable probability" of a different result, and defining that term).

The state post-conviction court's conclusion that Petitioner would have been impeached had he testified is also objectively reasonable.  The Florida Evidence Code provides that "[a] party may attack the credibility of any witness, including an accused" with prior convictions for felonies or crimes involving "dishonesty or a false statement regardless of the punishment."  § 90.610(1), Fla. Stat. (2016).  Evidence of prior convictions remains subject to exclusion as character evidence if used to create an improper propensity inference, or if they create unfair prejudice.  *Id.* § 90.610(3); *see* State v. Page, 449 So. 2d 813, 816 (Fla. 1984).  As the rule indicates, a criminal defendant who waives their Fifth Amendment privilege and chooses to testify is subject to impeachment with prior

convictions to the same extent as any other witness.[13]  *See* <u>Miller v. State</u>,

208 So. 3d 178 (Fla. 1st DCA 2016) (allowing the prosecution to treat

defendant's voluntary testimony "like that of any other witness"); <u>Lakes v.</u>

<u>State</u>, 137 So. 3d 450, 451-53 (Fla. 4th DCA 2014) (holding defendant may

be cross-examined about opportunity to fabricate testimony).  The rule

does not require that the prior crime involve an affirmative misstatement or

misrepresentation of fact by the defendant.  <u>Page</u>, 449 So. 2d at 816.  The

impeachment is limited to stating the number of prior convictions, unless

the witness "*denies* having been convicted, or misstates the number of

convictions," in which case "counsel may impeach by producing a record of

past convictions" which includes the nature of the past crimes.  <u>Trapp v.</u>

<u>State</u>, 57 So. 3d 269, 273 (Fla. 4th DCA 2011).

Had Petitioner testified at his second trial, he could have been

impeached with the number convictions in his past for felonies or other

crimes involving dishonesty or false statements.  As the state post-

---

[13] *See* Charles W. Ehrhardt, *Ehrhardt's Florida Evidence* § 610.1 at 615 (2013) (noting "[w]hen a criminal defendant testifies, the credibility of the defendant is placed in issue like the credibility of any other witness").  Florida juries are instructed to "rely upon [their] own conclusion about the credibility of any witness," and in the event that the defendant testifies the jury is also instructed to "apply the same rules to consideration of [the defendant's] testimony that you apply to the testimony of the other witnesses."  Fla. Std. Jury Instr. (Crim.) 3.9.

conviction court noted, the prosecution's impeachment of Petitioner would have been particularly effective in light of Petitioner's trial strategy, which relied upon impeaching the prosecution's witnesses with their own prior felony convictions. This strategy would have the side-effect of discrediting Petitioner to the same extent as the other witnesses in the case. If Petitioner denied his previous convictions, or misstated the number of previous convictions to which the rule applied, the prosecution could have introduced evidence of Petitioner's prior convictions for tampering with evidence, and giving a false name to police officers, which would cast serious doubt on Petitioner's credibility. *See* Ex. D. at 297 (describing Petitioner's prior convictions). It was objectively reasonable for the state courts to conclude on this basis that Petitioner could not demonstrate that, but for counsel's deficient performance, there was a reasonable probability of a different result at trial with respect to Ground I of the section 2254 petition. Accordingly, relief on Ground I should be denied.

**Ground II: Trial Counsel's Failure to Object to Bolstering**

In this Ground, Petitioner claims that "the Prosecutor made comments in the jury's presence that were improper and very prejudicial to the Petitioner" by bolstering the testimony of its witnesses in closing

argument. ECF No. 1 at 5-6. Petitioner argues that "[d]ue to the magnitude of the comments a curative instruction would not have salvaged the matter" and that "[h]ad counsel objected and requested a mistrial the court would have granted the motion." *Id.* at 6. Petitioner contends that the case against him "was not strong and the improper bolstering clearly had a[n] effect on the jury's verdict." *Id.*

The prosecutor commented on witness credibility several times during closing argument. First, the prosecutor told the jury that the victim, Kevin Ratliff, "had no reason to come in here and fabricate his story to you. I would submit to you that if he did anything he minimized what occurred on that day. There wasn't a motive that was indicated, that [sic] why he would testify the way he did." Ex. H. at 176-77. The prosecutor emphasized the credibility of Valarie Mitchell, who testified that she saw Petitioner draw a firearm and shoot the victim, commenting that she had "[n]o motive why she would be up here not telling you all the truth." *Id.* at 177. The prosecutor continued:

> She doesn't have anything too [sic] gain or lose from fabricating this story. She was friends with Mr. Sharpe and she was related to Mr. Ratliff. Think about how she testified, members of the jury. She didn't attempt to hide anything. She didn't stumble with any of her comments. Her memory was

> accurate.  She saw what she saw and she came in
> here and told you what she saw.  She didn't try to
> hide anything.

*Id.* at 178-79.  The prosecutor also commented that Gibbs "had no reason

to come in here and testify, no motive to testify against Mr. Sharpe."  *Id.* at

179.

On rebuttal, the prosecutor went over the jury instructions on

weighing witness testimony, and again told the jury that Mitchell had "no

reason . . . to come in here and lie.  She told you, I saw the way it was.  I'm

coming in here and telling you the way I saw it."  *Id.* at 201.  Continuing, the

prosecutor said, "I'll leave it to you to what everybody said they saw.

Everybody seemed to me to be able to recall exactly what they had seen

that day and testify to it."  *Id.* at 204.  The prosecutor asked, "Was the

witness straightforward?  I didn't see anybody trying to hide anything."  *Id.*

The state post-conviction court found that the prosecutor's

statements "were permissible argument on the evidence presented and on

the credibility of testifying witnesses," and held that Petitioner was "unable

to demonstrate any deficiency in, or prejudice from, counsel's performance

in that regard."  Ex. L. at 40.  The First DCA affirmed without opinion.

Sharpe, 147 So. 3d at 989.  Respondent argues that, even if the

prosecutor's comments were improper "they were not so egregious as to infect the trial with unfairness" and therefore did not violate Petitioner's right to due process of law.  ECF No. 14 at 8.  Respondent further contends that even if the comments did constitute improper bolstering, Petitioner's counsel chose not to object to them for strategic reasons, because an objection "could have emphasized the prosecutor's otherwise benign observations." *Id.*

"Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury support's the witness's testimony." <u>Hutchinson v. State</u>, 882 So. 2d 943, 954 (Fla. 2004).  "Although wide latitude is permitted in jury argument, it is improper for an attorney to express a personal opinion as to the credibility of a witness." <u>Johnson v. State</u>, 801 So. 2d 141, 142 (Fla. 4th DCA 2001). "[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." <u>Miller v. State</u>, 926 So. 2d 1243, 1254-55 (Fla. 2006).   Merely commenting that a witness was "'honest and straightforward' while testifying" does not constitute improper bolstering.  <u>Yok v. State</u>, 891 So. 2d 602, 603 (Fla. 1st

DCA 2005).  A comment which is "a fair statement of the evidence produced during the trial and fair rebuttal of the defense" or which was "in direct response to argument made by the defense" is not improper.  Pagan v. State, 830 So. 2d 792, 809 (Fla. 2002).

The federal rule against improper bolstering is similar to the Florida rule: it is ordinarily improper under federal law for a prosecutor to vouch for the credibility of a witness, but "[t]he rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case."  United States v. Bernal-Benitez, 594 F.3d 1303, 1313-14 (11th Cir. 2010).  Improper bolstering violates due process if its admission renders the trial fundamentally unfair.  Snowden v. Singletary, 135 F.3d 732, 737-39 (11th Cir. 1998).

It was objectively reasonable for the state court to hold that the prosecutor's comments in closing argument "were permissible argument on the evidence presented and on the credibility of testifying witnesses" and that Petitioner's counsel's failure to object did not amount to deficient performance.  Ex. L at 40.  The prosecutor's comments during closing argument were permissible under Florida and federal law as rebuttal of the

defense's strategy of impeachment, and were fair comments on the evidence presented to the jury.  It would have been reasonable for Petitioner's counsel to conclude that any objection would have lacked merit under both Florida and federal law.  "Failing to make a meritless objection does not constitute deficient performance."  Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015).

Even if the prosecutor's comments were improper, the state court's presumption that Petitioner's counsel decided not to object as part of a permissible trial strategy was reasonable.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible opinions are virtually unchallengeable" in an ineffective assistance claim. Strickland, 466 U.S. at 690.  Given the "strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect," Harrington, 562 U.S. at 109, the state court's conclusion that counsel's performance was not deficient is objectively reasonable even if the prosecutor's comments were improper.  "The test is whether counsel's representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions."  Thomas v. United States, 596 F. App'x 808, 810 (11th Cir.

2015).  "[T]he question is not what the best lawyers would have done, nor even what most good lawyers would have done, but instead is only whether a competent attorney reasonably could have acted as this one did given the same circumstances."  Spaziano v. Singletary, 36 F.3d 1028, 1041 (11th Cir. 1994).  Attorneys sometimes decline to raise valid objections in order to avoid drawing the jury's attention to an objectionable comment which the jury might otherwise have regarded as unimportant.  *See* Chandler v. Crosby, 454 F. Supp. 2d 1137, 1183-85 (M.D. Fla. 2006) (holding that failure to object to prosecutor's comments in closing was a reasonable trial strategy); *see also* Zakrzewski v. McDonough, 455 F.3d 1254, 1259 (11th Cir. 2006) (holding that strategy of not objecting during closing argument "unless the objection is a strong one" was reasonable). Therefore, even if the prosecutor's comments were inappropriate, the state court's conclusion that Petitioner's counsel did not render ineffective assistance by failing to object to bolstering was not contrary to clearly established federal law, and did not involve an unreasonable application of clearly established federal law.  Accordingly, relief on Ground II should be denied.

**Ground III: Cumulative Error**

In his third and final ground, Petitioner alleges "that he was denied a fair trial based upon counsel's cumulative errors."  ECF No. 1 at 7. Petitioner presented this claim in his Rule 3.850 motion, and the state courts found "no such cumulative prejudice."  Ex. L at 40.  The Eleventh Circuit has rejected arguments of "cumulative error" in section 2254 proceedings, noting that although the Supreme Court has not addressed the cumulative error doctrine in the context of an ineffective assistance claim, "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there generally is no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 564-65 (11th Cir. 2009) (citing United States v. Cronic, 466 U.S. 648, 659 n. 26 (1984)).  Because Petitioner has not shown that his trial counsel made any constitutional errors, Petitioner cannot show that he suffered prejudice from some combination of such errors.  Therefore, relief on Ground III should be denied.

## Conclusion

Petitioner has not shown that the state court's adjudication of his claims was either contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, Petitioner has not demonstrated that he is entitled to federal habeas relief, and the section 2254 petition should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make "a substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining substantial showing).  Therefore, the Court may deny a certificate of appealability.

Case No.: 4:14cv550-RH/CAS

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation. Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

Accordingly, it is respectfully **RECOMMENDED** that the section 2254 petition (ECF No. 1) be **DENIED**.  It is also respectfully **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

In chambers at Tallahassee, Florida on March 8, 2017.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific**

Case No.: 4:14cv550-RH/CAS

written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of these objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.